WILLIAM H. PALMER *et al. vs.* THE PRESIDENT, DIRECTORS, AND COMPANY OF THE UNION BANK.

Bequest in trust of corporate stock to the president and two vice-presidents of the M. Society, the dividends to be used as premiums for medical essays, for printing the prize essays, and for compensating the trustees. Unused income to be added to the principal of the trust fund. If the dividends were used for other purposes, or the trustees neglected their duties for a year, or the M. Society discontinued its anniversary meetings, or dwindled in membership to twenty, then " this bequest shall thenceforth cease and determine, and said stock and the dividends arising therefrom shall thereupon descend to and vest in my heirs at law."

*Held*, a good charitable bequest.

*Held*, further, that the president and vice-presidents from time to time of the M. Society were, by virtue of their office, trustees.

*Held*, further, that the limitation on default in the trust to the heirs at law of the testator was void for remoteness.

BILL IN EQUITY for instructions.

Caleb Fiske, of Scituate, by his will, dated March 12, 1831, and proved November 7, 1834, created a trust as follows : —

" *Item.* I give and bequeath to the president and two vice-presidents of the Medical Society of the State of Rhode Island for the time being, and to their successors in office, the semi-annual dividends arising from forty shares of stock which I own in the Union Bank in Providence, the amount thereof two thousand dollars, in trust for the uses herein limited. Use : the first nine twelfths of said dividends shall constitute a fund to be applied in the manner following, to wit : The said trustees, or either two of them, shall select at every annual meeting of said society such subject or subjects for investigation as they may judge most conducive to the advancement of medical science, and give notice thereof in one of the newspapers published in Newport, and in one published in Providence, for the term of six weeks, offering such premium or premiums as the annual product of said fund will justify, to be awarded and paid by said trustees for the best treatise on the subject proposed by them for investigation, to be communicated to said trustees one month previous to the next annual meeting of said society ; and in order that a laudable spirit of emulation may be excited and maintained, the trustees shall not only suitably reward the authors of the fortunate productions, but also prescribe such rules for receiving the communications, and deciding on the merits of the several preferences, as will shield the unsuccessful competitor from obloquy or reproach. Use : the second two twelfths of the profits or dividends of said stock is to remain at said trustees for their services in the execution of the several trusts herein confided to them. Use : the third one twelfth of the profits of said stock is to be appropriated to printing and supplying each member of said society with a copy of such treatise for which premiums shall have been awarded. It is believed, however, that the copyright of those productions may be so disposed of by said trustees as not only to furnish the members of said society with copies gratis, but also

make some addition to the aforesaid fund; and it is also believed that said trustees, in consideration of the advantages which said society may derive from a discreet management of said fund, will frequently, if not uniformly, render their services gratuitously, whereby a further addition may be made to said fund, if those anticipations should be realized, in part or in whole; whatever sums may remain unappropriated shall be added to said fund for the uses aforesaid. And my will further is, and I do hereby ordain, that the aforesaid forty shares of stock, the nominal amount whereof is two thousand dollars, shall remain registered in my name in the books of said bank, but the dividends or profits arising therefrom shall be subject from time to time to the orders of said trustees for the uses above limited, but every order drawn on said bank shall express the uses to which the money is to be applied. Furthermore, the said trustees shall cause their proceedings in the premises to be recorded in a book or books from year to year, and deposited in the archives or cabinet of said society for safe-keeping, inserting therein the annual amount of said fund, and the additions, if any, made thereto, the subject or subjects proposed for investigation, the amount of premiums offered, the names and places of abode of the persons to whom premiums are awarded, with such other facts and remarks relative to the application of said dividends as they may judge expedient; and the proceedings, or such part thereof as shall have occurred each preceding year, shall be audibly read before said society at their annual meeting, and also be subject to the inspection of any member of said society, and also be free for examination by my heirs at law. Provided, nevertheless, and I do hereby order, that if the said dividends or profits arising from the aforesaid stock or any part thereof should at any time hereafter be used for any other purposes than those before limited, or applied in any other manner than is alone directed, or if said trustees or either two of them for the time being shall neglect or refuse to execute the aforesaid trust in manner and form above specified, sickness and other unavoidable incidents excepted, for the term of one year, then in either of those cases this bequest shall thenceforth cease and determine, and said stock and the dividend arising therefrom shall thereupon descend to and vest in my heirs at law. Provided, also, and I do hereby ordain, that if at any time here-

after said medical society shall discontinue its anniversary meetings authorized by its charter, or in case its members (fellows), exclusive of honorary members, should decline in numbers and at any time hereafter be reduced to twenty, then, and in either of those cases, this bequest shall thenceforth cease and determine, and said stock and the dividends or profits arising therefrom shall descend to and vest in my heirs at law.".

*February* 13, 1892. STINESS, J. By his will made in 1831, Caleb Fiske bequeathed to the president and two vice-presidents of the Medical Society of the State of Rhode Island, the dividends arising from forty shares of stock in the Union Bank, in trust for the purposes of giving premiums for treatises on subjects conducive to the advancement of medical science, to be selected by said trustees; for the compensation of said trustees; and for printing and distributing copies of the treatises to which premiums shall have been awarded. He also directed that this stock was to remain registered in his name in the books of said bank, and that any unappropriated surplus, or concession of compensation on the part of trustees, who, he believed, in consideration of the advantages which the society would derive from the trust, would render gratuitous service, should be added to the fund. The will also provided, if the trustees should neglect or refuse to execute the trust for the term of one year, or if the society should discontinue its meetings or decline in numbers to twenty, the bequest should thenceforth cease and determine, and said stock, with the dividends and profits thereof, should descend to and vest in his heirs at law.

Caleb Fiske died in 1834, since which time the trust has been administered by the president and two vice-presidents of the Rhode Island Medical Society, pursuant to the will. By investments arising from surplus income and the gratuitous service of trustees, one hundred and nineteen additional shares of the stock of said bank now stand in the name of " Caleb Fiske Estate," and thirty-six additional shares in the name of " Trustees of Fiske Donation for Printing Prize Dissertations." The Union Bank is closing up its affairs, under the statute, and has declared a dividend in liquidation. No income is now being earned on said stock, and, as such income is necessary to carry out the trusts of the will, the complainants, as trustees, file this bill for instructions whether they

are the legal trustees of said fund, and whether the limitation to the heirs is void. The heirs are made parties by special order, and one has made answer to the bill.

Notwithstanding that the bequest to the trustees was of income, and that the shares were to remain in the name of the testator, the gift was really of the shares themselves as a fund, to which the trustees were to make additions from time to time out of the income, as they might be able.

It has been decided by this court that a gift in trust for the distribution of prizes for proper purposes is a lawful charitable bequest. *Almy* v. *Jones, ante, p.* 265.

No question can be made that the purpose of this bequest is not only proper but highly commendable. Nothing can be of greater importance to the public than information upon subjects pertaining to health. This trust is to stimulate study upon such subjects, and to disseminate the result.

There being, then, a gift upon a valid charitable trust, the question comes, who are the trustees? The legatees under the will were officers of an incorporate society. In this respect the legacy was similar to that in *Pell* v. *Mercer*, 14 R. I. 412. In that case a legacy in trust was made to the president of Harvard University; to the president of Yale College; to the secretary of the Smithsonian Institute; and to three other persons, not officers of such corporations, "should they or either of them then be alive, to be used by them for the establishment of scholarships or foundations in such colleges as they may select," for the benefit of poor students. It was held that the bequest was to the presidents and secretary of the corporations indicated, who hold office as such at the time of payment of the bequest; which, as the bequest was residuary, would be long postponed. It was also held that the clause, "should either of them be alive," related to the three individuals named. The gift, then, to the officers, as such, was to continue to the time of payment, and then vest in the officers for the time being. Upon the same principle the gift should continue to vest in such designated officers. In the present case, the gift is not to the Rhode Island Medical Society as a corporation, although indirectly for the benefit of its members. Probably the testator thought the duties required of the trustees could not be well per-

formed by a large society, and so he committed them to the three most prominent officers of the society. He knew, of course, the first trustees of the bequest would not always remain in office, and there would be changes from time to time, thus making vacancies which would require new appointments, and so he provided that the successors in office should be trustees *virtute officii.*

This was tantamount to providing that vacancies and the appointment of new trustees should be made by the society by its election of officers. The case is therefore not within Pub. Stat. R. I. cap. 178, § 1, which authorizes an appointment by the court when the will does not provide for a reappointment.

As to the fund held by the trustees, in view of the provision in the will for accumulation, we think it is clear it embraces not only the original forty shares, but also the additions which have been made to it.

The provison of the will relating to forfeiture upon failure to perform the trust is: "This bequest shall thenceforth cease and determine, and said stock and the dividends arising therefrom shall thereupon descend to and vest in my heirs at law." The same provision is repeated at the close of the bequest in substantially the same words. The trustees claim that this provision is void under the rule against perpetuities. Provisions of this sort are of two kinds, — one, where upon failure of the trust there is a condition of reverter to the grantor or his heirs; and the other where there is a limitation over to others, in a manner which makes it possible for the time of taking to go beyond the allotted time of a life or lives in being and twenty-one years thereafter. The former case is not within the rule against perpetuities, because a present vested and transmissible interest is reserved; a right of entry upon condition broken. This right may be released to the holder of the estate upon condition, thereby vesting in him an absolute and indefeasible estate; and so it does not tie up an estate, nor fetter its alienation. In the latter case no present interest is reserved, but the limitation over is executory in its nature. It passes no vested interest and is inalienable, because it is impossible to ascertain in whom the estate will vest upon the breach of the condition upon which the ulterior gift is to take effect. The validity of such a provision, therefore, depends upon the question whether it is a

condition or a conditional limitation. If it reserves a right to the grantor or his heirs, it is a condition and valid; if it gives a right over to others upon breach of condition, it is a conditional limitation and void. This subject is so fully and learnedly examined by Judge Bigelow, in *Proprietors of Church in Brattle Square* v. *Grant*, 3 Gray, 142, that further discussion of it is useless. See, also, *Theological Education Society* v. *Attorney General*, 135 Mass. 285; *Wells* v. *Heath*, 10 Gray, 17.

We think it is clear that this clause of the will before us reserves no right upon condition. On the contrary, by express terms it creates a contingent future limitation, and declares that *thenceforth* the bequest shall vest in his heirs. It is a plain direction that no right shall vest until the default in the trust, but thereupon it shall vest. The bequest is like that in *Swinburne, Petitioner*, 16 R. I. 208, which was held to be an executory bequest to the heirs of the testator at the time it should take effect. In the present case the persons to whom the gift over is made are not the ones who would take by reason of kinship to the testator at the time of his decease, but different persons, who would take by reason of their answering at the time the description in the will. The reservation is not to heirs or next of kin generally, but to a designated class. This is clearly a conditional limitation, which is rendered void by the possibility at its vacation of violating the rule against perpetuities. 4 Kent Comment. 12th ed. 283.

We therefore decide that the president and vice-presidents of the Rhode Island Medical Society are the trustees of the fund, and as such may receive the dividends in liquidation for reinvestment under the trust, and that the limitation to the heirs of Caleb Fiske, upon default in the trust, is void.

*Joseph C. Ely*, for complainants.

*Thomas C. Greene*, for respondents.